IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jameir Legette, | ) | Civil Action No. 4:10-cv-70266 |
| | ) | Criminal Action No. 4:09-cr-77 |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

PROCEDURAL HISTORY

This Matter comes before the Court on the *pro se* Petitioner Jameir Legette's (hereinafter "Legette" or "Petitioner" or "Defendant") filing of a motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct the sentence he received after pleading guilty to one count of being a felon in possession of a firearm and ammunition.  As the record reflects, on January 27, 2009, a federal Grand Jury returned an Indictment which charged the Defendant with (1) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); (2) possession with intent to distribute a quantity of cocaine base in violation of 21 U.S.C. 841(a)(1) and (b)(1)(C); and (3) possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  On November 3, 2009, Petitioner pled guilty, pursuant to a plea agreement, to the felon in possession charge.  The remaining charges were dismissed.  On April 6, 2010, Petitioner was sentenced to the forty-six months imprisonment, to be followed by 3 years of Supervised Release.  This Judgment was signed by the Court on April 8, 2010. (Doc. # 88).  Petitioner did not appeal.

1

The Petitioner, who is appearing pro se, filed the present action on September 15, 2010, alleging two grounds for relief. (Doc. # 91). The United States of America ("Government") filed its response to Petitioner's motion to vacate under 28 U.S.C. § 2255 and a motion for summary judgment on October 19, 2010. (Docs. # 101 & # 102). The Petitioner filed a response to the Government's motion for summary judgment on November 22, 2010. (Doc. # 106). This matter is ready for disposition.

<u>28 U.S.C. 2255</u>

Section 2255 provides that a prisoner in custody under sentence of a federal court may file a motion in the court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255. Generally, 28 U.S.C. § 2255 requires Petitioner to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." This is the proof needed to allege a constitutional error. "The scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.' " Leano v. U.S., 334 F.Supp.2d 885, 890 (D.S.C. 2004)*(*quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a section 2255 motion, the

2

court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's *pro se* motion, and finds that no hearing is necessary.

<u>SUMMARY JUDGMENT STANDARD</u>

The Government filed a response and motion for summary judgment as to all grounds raised by Petitioner. (Docs. # 101 & # 102). The issue in determining a motion for summary judgment is whether there exists a genuine issue of material fact. FED.R.CIV.PRO. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323; <u>see also</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249. Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce specific facts showing that there is a genuine issue for trial, rather than resting upon bald assertions contained in the pleadings. FED.R.CIV.PRO. 56; <u>see Celotex</u>, 477 U.S. 317. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is

3

"entitled to judgment as a matter of law" because the non-moving party has failed to make a

sufficient showing on an essential element of her case with respect to which she has the burden of

proof. Celotex, 477 U.S. at 322-23 (1986).

<u>DISCUSSION AND ANALYSIS</u>

The Petitioner has filed this action asserting the following claims:

I.     Denial of effective assistance of counsel during sentencing.
       Movant Legette asserts that his attorney provided defective assistance of counsel during
       sentencing. Further, Movant asserts that counsel was ineffective for failing to investigate the
       facts and law as it related to the 4 level enhancement that was applied pursuant to U.S.S.G.
       § 2K2.1. That section provides that "If the defendant used or possessed any firearm or
       ammunition in connection with another felony offense . . . increase by 4 levels" A review of
       the records in this case will establish that no time was there any drugs found on me
       whatsoever but rather the drugs were found in the officer's vehicle. Counsel failed to object
       to this fact which was unreasonable and prejudicial.

II.    Movant's sentence was imposed in violation of the Constitution or Laws of the United
       States.
       Movant asserts that his sentence was impermissible increased based on conduct that is/was
       not attributable to him. Movant's offense level was increased by 4 levels because it was
       determined that the weapon was possessin [sic] in connection with another offense. A
       review of the facts will establish that no drugs were involved in the instant offense nor with
       the connection of the firearm. Counsel failed to object.

With regards to Petitioner's first ground for relief, he alleges that defense counsel was

"ineffective for failing to investigate the facts and law as it related to the 4 level enhancement that

was applied pursuant to U.S.S.G. § 2K2.1."[1] H also asserts that counsel was ineffective for "failing

---

[1]U.S.S.G. 2k2.1(b)(6) provides: "If the defendant used or possessed any firearm or
ammunition in connection with another felony offense; or possessed or transferred any firearm or
ammunition with knowledge, intent, or reason to believe that it would be used or possessed in
connection with another felony offense, increase by 4 levels. If the resulting offense level is less
than level 18, increase to level 18."

Application Note 14 to Guideline 2k2.1 addresses the phrase "in connection with" and
indicates that: "In General.--Subsections (b)(6) and (c)(1) apply if the firearm or ammunition
facilitated, or had the potential of facilitating, another felony offense or another offense,

4

to object to a 4 level enhancement under the advisory guidelines, due to he never at anytime possessed any crack cocaine and has never admitted that the drugs that the police found were his in any capacity pre or post Miranda.  Petitioner in this case possessed no drugs in connection with his case of gun possession."  Petitioner asserts the following in support of his position:

> In fact, officers involved in this case at an evidentiary hearing, upon being issued a subpoena ad testificatum that petitioner was first searched outside the bank, when the gun was found and no drugs were at that time found, and second, upo[n] being placed in custody at the Dillon County Detention Center, no drugs were found.  The Officer after placing him in custody, then came back after searching his patrol care then "alledgely [sic] found the dugs" and attributed them to the petitioner.  Due to the fact that the officer did not find the alledged [sic] drug on petitioner, it cannot be found even under a preponderance of evidence standard the drugs were petitioner's as police officer's transport criminal daily in their cars and those drugs could have been anybody's previously transported.

Petitioner indicates that he "conferred with his counsel and asked him to file the objection and be ready for his sentencing on the argument that the drugs were not his as they were found in the patrol car and not on his person after twice being searched by the officers and the drugs were found coincidentally after he was placed in custody at the Dillion [sic] County Detention Center, an argument that the court should have clearly heard as to credibility other than statement made within reference to the events in the PSR."  The Government asserts that Petitioner's allegations of deficient performance on the part of defense counsel are contrary to the record.  In support of its position, the Government relies on the affidavit of defense counsel, filed on October 15, 2010.  The Court will address the parties' arguments in turn.

---

respectively."

    Subsection (C) of this application note defines "Another felony offense," for purposes of subsection (b)(6), as "any Federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."

In evaluating the claims outlined above, to the extent that they raise ineffective assistance of counsel allegations, the Court looks first at the standard for effective representation. A claim of ineffective assistance of counsel is subject to collateral review pursuant to § 2255. <u>McCann v. Richardson</u>, 397 U.S. 759, 771, n. 14 (1970). In order to prevail on a claim of ineffective assistance of counsel, the defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id</u>. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." <u>Id</u>. at 689. As the <u>Strickland</u> Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

<u>Id</u>. at 689.

This Court has carefully reviewed the entire record in this case and has considered all of the arguments and claims raised by Petitioner. In considering the merits of Petitioner's claims of ineffective assistance after a complete review of the record in this case, the Court finds these allegations to be without sufficient merit. In defense counsel's affidavit he indicates the following:

1.     I was appointed to represent Jameir Legette at his initial appearance. I represented

Jameir Legette throughout the course of the federal proceedings against him.

2.      Mr. Legette has alleged that I was ineffective by failing to object to a four level enhancement pursuant to 2K2.1(b)(6). This enhancement was based on the fact that the defendant possessed crack cocaine at the time he was in possession of a firearm.

3.      I discussed the facts of this case with Mr. Legette on numerous occasions. I have reviewed my notes of those meetings. On May 29, 2009, Mr. Legette told me about the drugs that were found. My notes read:

> The drugs were found in the police car. Defendant said you didn't get that off me; that ain't mine, but you the police and you can do what you want so "bunk it" I'll just take the charge.

4.      On another undated occasion, I discussed the charges with Mr. Legette. He advised me that the dope that the he had on him was dope Jake brought from him. I probably incorrectly wrote "from" instead of "for" because I do not recall the defendant ever saying that he sold dope to Jake. The defendant always denied that he was a drug dealer. In addition, my handwriting is so bad, I often struggle reading my notes after only a few months have passed since I made them.

5.      Based on my conversations with the defendant, I had no reason to believe that the narcotics found in connection with the defendant on the day that he possessed the guns were not possessed by the defendant.

6.      I have reviewed the transcript of the preliminary hearing of this case and the ATF Agent testifying in that hearing indicated under oath that the defendant admitted possessing the narcotics found on him.

7.      In addition, there is a incident report that states that

> "subject was transported to the Dillon County Detention. After a thorough search of the subject at the jail, subject had in his possession a yellow in color tube, inside the tube was a white in color substance believed to be crack cocaine. Sgt. Bobby Jones field tested this substance and the substance was crack cocaine. Weight of crack cocaine was approximately 0.7 grams. "

8.      I filed a motion seeking to suppress any firearms, narcotics or statements taken from the defendant on or about January 14, 2009, the date of the defendant's arrest. The narcotics I sought to suppress were the narcotics that are listed in the incident report

and to which the defendant refers in his petition. I would not have sought to suppress the narcotics if the defendant told me that the narcotics that he alleges were found in the police car were not his. Had that been the case, the defendant would not have standing to file a motion to suppress to exclude the narcotics since the narcotics would be abandoned property in which he did not have a privacy interest.

9.    Based on my recollection of this case, Mr. Legette's focus, as well as mine, was to get a resolution that did not involve a plea to possession with intent to distribute crack cocaine, as alleged in Count Two. The defendant always denied that he was crack cocaine dealer, admitting instead that he was a crack cocaine user. The four level enhancement of possession of narcotics in connection with possession was never an issue. I went over the pre-sentence report with Mr. Legette which included the four level enhancement. My notes do not reflect that Mr. Legette told me that he objected to this enhancement at that time.

During the Preliminary hearing held on January 26, 2009, the Government called ATF agent

Wes H. Jackson, Jr., to testify. Below is an excerpt from his testimony, under oath:

(Testimony on Direct)

Q:    Would you tell the Judge what happened on January 14, 2009?

A:         On January 14th, 2009, Mr. J. Kelly entered the First Bank located on [redacted] in Latta, South Carolina and told a bank employee that a man was outside trying to make him get money from the bank and that he was afraid and that this gentleman, who was Mr. Legette, had a gun.
            Officers then responded and stopped two males outside the bank in which the witness and the victim identified one of those suspects as Mr. Legette and stated also that allegedly an armed man was trying to force the victim to get money from the bank.
            The officer then conducted a pat-down of Mr. Legette in which they located one loaded Ruger, Model P85, .9 millimeter caliber pistol from his pants pocket.
            Later that day at the jail, officers also located one gram of crack cocaine on Mr. Legette.

. . .

Q:    Did Mr. Legette make any statements after he was arrested, either to you or to other local law enforcement officers:

A:    He did. On January 20th of this year, I went and interviewed Mr. Legette at the Dillon County Detention Center. After waiving his rights, Mr. Legette admitted on that

8

particular day, January 14th, that he did possess one Ruger pistol on that day and also that he vaguely– or couldn't remember exactly what transpired because he was on crack.

. . .

(Testimony on Cross-Examination)

Q:      He signed the waiver of rights form?

A:      Yes, sir.

. . .

Q:      And other than the crack cocaine that was later found on Mr. Legette, was there any money found on Mr. Legette?

A:      Not to my knowledge.  I believe Mr. Legette said that they ran out of money so that's why they went to the bank.

Q:      And I have an arrest warrant from the Latta Police Department that indicates that he was charged with possession of crack cocaine; is that correct?  Let me show you.

A:      Well, they located this at the jail.
        For Mr. Legette?

Q:      Yes.

A:      Right.

Q:      Mr. Legette was charged with possession of crack cocaine?

A:      Yes, sir.

Q:      That arrest warrant indicates that the crack cocaine, the amount of crack cocaine, was approximately seven-tenths of a gram?

A:      That's what it states right here.

Additionally, the Court notes that on August 24, 2009, defendant filed a motion to suppress

any firearms, narcotics or statements taken from him on January 14, 2009 or thereafter. (Doc. # 55).

9

In his motion, the defendant contended that any firearms and/or drugs found in his possession were found pursuant to a search by law enforcement officers not supported by reasonable suspicion or probable cause, thus violating the Fourth Amendment.  Defendant indicated that on the date in question, the police discovered a firearm in his possession during a pat-down, and then later found a small amount of narcotics in his possession. Defendant also argued that an alleged statement admitting to the possession of the firearm as well as the narcotics must likewise be suppressed.  In defendant's memorandum in support of his motion to suppress (Doc. # 59), he indicated that:

> After Mr. Legette was arrested, he was jailed. ATF Agent, West Jackson visited Mr. Legette, and after Mirandarizing Legette, took a statement from Mr. Legette in which Mr. Legette admitted possessing the firearm and narcotics. This confession follows the illegal seizure that lead directly to the discovery of the firearms and narcotics. Without the illegal search and seizure, Mr. Legette would not have made this confession. Accordingly, it must be suppressed. See Wong Sung v. United States, 371 U.S. 471 (1963).

On October 9, 2009, the Government filed a response in opposition to defendant's motion.  (Doc. # 65).  The Government attached an incident report from the January 14, 2009 occurrence to its response.  The attached incident report indicates that:

> afer a thorough search of the subject at the jail, subject had in his poss[ession] a yellow in color tube, inside the tube was a white in color substance believed to be crack cocaine.  Sgt. Bobby Jones field tested the substance, and the results the substance was crack cocaine, weight of crack cocaine was approximate .7 grams. . .

The Court held a hearing on the suppression motion on October 15, 2009 and denied the same.  The Court notes that if the narcotics, which defendant sought to suppress, were not his then he would have lacked standing to challenge the search in this case. See U.S. v. Alvarez, 2011 WL 674724, 1 (4th Cir. 2011) (finding that defendant lacked standing to challenge the search of a bag which had been abandoned, after being thrown out a parked car).

Additionally, the Court notes that paragraph nine of defendant's pre-sentence investigation report indicates that "[Latta Police Department] officers performed a pat down search of Legette and located a loaded Ruger pistol in his pants.  Later at the detention center, officers also recovered approximately one gram of crack cocaine on Legette."  It is part of the Court's standard colloquy at sentencing to ask the defendant if he has had sufficient to time to review the pre-sentence report with his attorney and whether or not he has any objections to the information contained therein.

After careful review and consideration, this Court concludes that Petitioner's allegations are contrary to the facts of the case contained in the record as set forth herein.  As the Government asserts, and as supported by the record in the case, it appears that Petitioner did possess a small amount of crack cocaine at the time of his arrest and admitted the same.  Defense counsel's affidavit indicates that Petitioner admitted the crack cocaine was for him. (Affidavit at ¶ 4.).  In fact, defense counsel proceeded on a suppression motion on the very basis that the drugs and gun actually belonged to Petitioner. (Affidavit at ¶ 8.).  It bears noting that although the alleged possession of crack cocaine was a relevant issue at a number of the proceedings in Petitioner's case, at no time did Petitioner indicate that the crack cocaine did not belong to him.  The Government asserts that now in his Petition, Petitioner merely alleges that the drugs were found in the police car in which he was riding and that fact alone does not negate a finding that Petitioner possessed the crack cocaine in conjunction with the firearm.

Petitioner's burden as outlined under Strickland is two-pronged, and this Court is not sufficiently persuaded that he has satisfied either prong in relation to the ineffective assistance of counsel ground raised in his petition.  As discussed more thoroughly above, Petitioner has made an assertion that counsel has failed to do something that Petitioner feels he should have done, however,

11

Petitioner does not allege, nor offer persuasive argument that but for counsel's actions, the outcome would have been different. Petitioner fails to offer any factual basis to support his conclusory ineffective assistance of counsel claims. See generally U.S. v. Sprague, 2006 WL 2583766, *2 (D. S.C. 2006). In sum, this Court cannot conclude that Petitioner's legal counselor was deficient in his performance, or that Petitioner can show any resulting prejudice therefrom. See Warren v. U.S., 2010 WL 2572856, 2 (W.D.N.C. 2010)(finding that mere speculation is insufficient to support a habeas claim); See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir.1992)("a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."). Accordingly, the Government's motion for summary judgment as to Petitioner's first claim for relief is granted.

As to Petitioner's second ground for relief, the Petitioner contends that his sentence is unconstitutional because of the application of the four-level enhancement. As noted above, the four-level enhancement was support by the facts of this case. The Government asserts that even if this Court were to find that the four-level enhancement should not apply, Petitioner is not entitled to be resentenced. The Fourth Circuit has held that "[b]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. Section 2255 provides relief for cases in which 'the sentence was in excess of the maximum authorized by law.' Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines." United States v. Pregent, 190 F.3d 279, 284 (4th Cir. 1999) (citing United States v. Mikalajunas, 186 F.3d 490, 495-496 (4th Cir.1999) ("[M]isapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice."); see also Auman v. United States, 67 F.3d 157, 161 (8th Cir.1995) (holding

12

absent a "miscarriage of justice," ordinary questions of Guidelines interpretation are not cognizable on collateral review); Scott v. United States, 997 F.2d 340, 341 (7th Cir.1993) ("A claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum."); Knight v. United States, 37 F.3d 769, 773-74 (1st Cir.1994) (holding that misapplication of Sentencing Guidelines is generally not a proper claim under § 2255); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir.1994) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255.")). In United States v. Segler, which the Fourth Circuit cited in Pregent, the defendant asserted that the district court misapplied the Sentencing Guidelines in sentencing him as a career offender. The Fifth Circuit held that a district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255. Id. at 1134. The Court went on to note that applying the § 4B1.1 criteria to determine whether to sentence as a career offender did not implicate any constitutional issues; and that defendant's claim could have been raised on direct appeal. Id. (citing United States v. Vaughn, 955 F.2d 367 (a nonconstitutional claim that could have been raised on direct appeal, but was not, may not be raised in a collateral proceeding)). Ultimately, the Segler Court concluded that defendant was not entitled to § 2255 relief.

Accordingly, after careful review and consideration. and in light of the authority discussed herein, the Court finds Petitioner's second claim for relief to be without sufficient merit.[2] Accordingly, the Government's motion for summary judgment as to Petitioner's second claim for relief is granted.

---

[2]To the extent that Petitioner's second ground for relief also raises an ineffective assistance of counsel claim, it is denied for the reasons set forth in the Court's analysis of Petitioner's first claim for relief.

13

<u>CONCLUSION</u>

For all of the reasons cited above, Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED**. Respondent's motion for summary judgment is **GRANTED** (Doc. # 101), and this matter is **DISMISSED**, with prejudice.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings. The Court concludes that it is not appropriate to issue a certificate of appealability as to the issues raised herein. Petitioner is advised that he may seek a certificate from the Fourth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

s/ Terry L. Wooten

**TERRY L. WOOTEN**
**UNITED STATES DISTRICT COURT JUDGE**

March 11, 2011
Florence, South Carolina

14